## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 07 Cr. 836 (RPP) |
| | : | |
| vs. | : | |
| | : | |
| JOSE MANUEL LANTIGUA. | : | January 3, 2008 |

### DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO UNCHARGED CONDUCT OF JOSE MANUEL LANTIGUA

### Factual Statement

Pursuant to Federal Rule of Evidence 403, defendant Jose Manuel Lantigua ("Lantigua") respectfully submits this motion *in limine* to preclude evidence of certain uncharged conduct that the government intends to offer at trial. The Indictment generally alleges that Lantigua was involved in a conspiracy to sell crack cocaine to a confidential informant ("CI") from December 5, 2002 to December 6, 2002.[1] Accordingly, the government intends to present evidence that the CI arranged to purchase more than 50 grams of crack cocaine from Lantigua and a co-conspirator.

In support of its case against Lantigua, and by way of letter dated, December 18, 2007, the government has indicated that it currently intends to offer evidence of Lantigua's prior uncharged conduct against him at trial. Specifically, the government seeks admission Lantigua's 1993 New York State felony conviction for the criminal possession of a controlled substance

---

[1] More specifically, Lantigua was charged by Indictment with one count of conspiracy to violate the narcotics laws of the United States in violation of Sections 812, 841 (a) (1) and 841 (b) (1) (A) of Title 21, United States Code, and one count of unlawfully, intentionally, and knowingly distributing and possessing with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 812, 841 (a) (1) and 841 (b) (1) (A) and Title 18, United States Code, Section 2.

("Criminal Conviction"), Lantigua's alleged participation in the sale, on or about May 16, 2002,

of approximately 62.5 grams of crack, in Manhattan New York ("May Sale"), and Lantigua's

alleged participation in the sale, on or about September 18, 2002, of approximately 63.5 grams of

crack, in Manhattan, New York ("September Sale") (collectively referred to as "Uncharged

Conduct").  As explained in greater detail below, the government has made an insufficient

showing that it is permitted to offer this evidence at trial, and therefore, should be precluded

from doing so.  Alternatively, if the Court determines that the government is permitted to offer

evidence of the Uncharged Conduct, the Court should prohibit the government from referring to

it until after the close of defendant's case, and subject to an appropriate limiting instruction.

## Discussion

### I. **The Government has made and Insufficient Showing**

The Second Circuit employs a four-part test to determine the admissibility of "other acts"

evidence under Rule 404(b).  United States v. Gilan, 967 F.2d 776, 780 (2d. Cir. 1992).  In the

instant case, the government has not complied with this test's requirements.  The relevant four-

part test is as follows:

> First, the evidence must be introduced for a proper purpose, such as proof of knowledge
> or identity.  Second, the offered evidence must be relevant to an issue in the case pursuant
> to Rule 402, as enforced through 104(b).  Third, the evidence must satisfy the probative-
> prejudice balancing test of Rule 403.  Fourth, if the evidence of other acts is admitted, the
> district court must, if requested, provide a limiting instruction for the jury.

Id. (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  Because the government

has not complied with these well settled requirements, it should be precluded from offering

evidence of the Uncharged Conduct at trial.

2

## A. No Proper Purpose

Despite the government's assertion that it is permitted to offer evidence of the Uncharged
Conduct, the government has neglected to specifically identify a proper purpose for introducing
such evidence. Rather, in its December letter, the government simply states that it is entitled to
offer evidence of the Uncharged Conduct "as proof of the defendant's motive, opportunity,
intent, preparation, plan, knowledge, identity, absence of mistake or accident, or for other
permissible purposes," without providing any analysis to support this claim. In the Second
Circuit, where the government's evidence of uncharged acts "is offered to prove the defendant's
knowledge or intent, the offer of similar acts evidence…*should be aimed at a specifically
identified issue*." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 167 (S.D.N.Y. 2006)
(quoting United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980) (emphasis added). Thus,
the government's recitation of a laundry-list of potentially permissible purposes, unaccompanied
by any specific analysis, falls short of the showing required by the Second Circuit. Because the
government has failed to specifically identify any proper purpose, the government has rendered it
impossible for the Court to conclude that this evidence is admissible under FRE 404(b).

## B. Uncharged Conduct Not Relevant

The government has similarly failed to demonstrate the relevance of the Uncharged
Conduct despite being required to do so. It is well settled that other crimes evidence must be
relevant to actual issues in the case. See, e.g., United States v. Mickens, 926 F.2d 1323, 1328-29
(2d Cir. 1991); accord United States v. O'Connor, 580 F.2d 38, 43 (2d Cir. 1978). "[C]aution
and judgment are called for, and a trial judge faced with an other crimes evidence problem
should require the Government to explain why the evidence is relevant and necessary." United

3

States v. O'Connor, 580 F.2d 38, 43 (2d Cir. 1978). Anything less could result in Lantigua's improper conviction based on his purported participation in other crimes.

Perhaps the government's most glaring omission is its failure to explain the relevance of Lantigua's nearly fifteen-year-old Criminal Conviction. The government must explain why a decade-and-a-half old conviction for possession of an unidentified controlled substance is at all relevant to an Indictment alleging that Lantigua conspired to sell crack cocaine. Given the government's failure to provide any "relevance analysis," all that remains is the government's impermissible attempt to demonstrate Lantigua's criminal propensity. Furthermore, because Lantigua has not indicated what legal or factual issues he intends to dispute, the Uncharged Conduct may in fact be entirely irrelevant to this case. United States v. Townsend, 2007 U.S. Dist. LEXIS 32639 (S.D.N.Y. 2007) (holding that where the defense has given no indication that it will dispute an issue, it is impossible for the Court to determine, at that time, whether other act evidence is admissible under Rule 404(b) on the ground that it is probative on that issue).

### C. **Government has not conducted required FRE 403 analysis**

The government has also failed to engage in the required F.R.E. 403 analysis. Assuming, *arguendo*, that the facts underlying the Uncharged Conduct were relevant, the Court should exclude evidence about them pursuant to F.R.E. 403 which "authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Old Chief v. United States, 519 U.S. 172, 180 (1997), citing F.R.E. 403. When conducting a F.R.E. 403 inquiry, the Court must "balance the probative value of and the need for the evidence against the harm likely to result from its admission." F.R.E. 403, Advisory Committee Note (citations omitted).

Evidence is unfairly prejudicial for purposes of F.R.E. 403 if it tends to have some adverse effect on the party against whom it is offered beyond the tendency to prove the fact which justifies its admission into evidence. United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). The Court has broad discretion in weighing the probative value of evidence against its prejudicial effect. United States v. Aboumoussallem, 726 F.2d 906, 912 (2d Cir. 1984) ("We accord trial judges considerable discretion in balancing the Rule 403 factors.") Furthermore, it is beyond dispute that the "prejudice of [other crimes] proof, once admitted, sticks to a defendant like mud throughout the trial." E.g., United States v. Everett, 825 F.2d 658, 659 (2d Cir. 1987). Consequently, the Second Circuit has repeatedly expressed concern over "the danger of unfair prejudice associated with the use of similar acts evidence." United States v. Colon, 880 F.2d 650, 656. In Colon, the Second Circuit reversed the defendant's conviction for distributing heroin because the trial judge "did not safeguard against" the danger that a jury could conclude "that because a defendant has committed a similar crime before, he...therefore has a criminal propensity sufficient to justify conviction in the case at hand." Id. at 656 citing United States v. Mohel, 604 F.2d 748, 751 (2d Cir. 1979).

In light of the possibility that a jury will make the type of impermissible inferences described above, evidence of Lantigua's Uncharged Conduct should be precluded. Specifically, (and again, assuming relevance), the probative value of Lantigua's nearly fifteen-year-old Criminal Conviction is substantially outweighed by the danger of unfair prejudice. Just as in Colon, there is substantial risk that a jury will conclude that Lantigua's other acts illustrate his criminal propensity that in turn justifies his conviction in this case. Of course, our analysis is limited at this stage by the government's reticence in explaining the relevance of the Criminal Conviction.

Furthermore, evidence may also be excluded under F.R.E. 403 if there is a substantial likelihood that it will confuse the relevant issues in the minds of the jurors. See, e.g., Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188-189 (3d Cir. 1990) (excluding evidence under F.R.E. 403 because "the testimony in question invited the jurors to ponder whether [the defendant] had . . . committed other unspecified illegalities. By tending to divert the focus of the jury's attention . . . the testimony injected a confusing factor into the case."). Rule 403 also permits the trial court to exclude evidence which poses a substantial danger of misleading the jury. Id.

Similarly, trial courts have also excluded evidence that would lead to waste of time. The Second Circuit has upheld a District Court judge's exclusion of arguably relevant testimony on the grounds of jury confusion and trial delay outweighed the benefits of introduction of the evidence. See e.g. United States v. Aboumoussallem, 726 F.2d 906 (2d Cir. 1984) (noting Judge Glasser feared that the proposed testimony would require . . . in effect, a "trial within a trial."); see also United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193-94 (2d Cir.) (court did not abuse discretion by excluding evidence as cumulative and confusing where prior testimony established all elements of the defense), cert. denied, 493 U.S. 933 (1989).

In this case, concerns of jury confusion and waste of time also militate against permitting the government to offer evidence of Lantigua's purported involvement in the May and September Sales. As a threshold matter, the government is prohibited by the applicable statute of limitations from charging Lantigua in connection with these sales. There is a great risk that introduction of such evidence will confuse the jury and divert the jury's focus from the charged conduct. Similarly, permitting the government to offer evidence of the May and September Sales will undoubtedly require a "trial within a trial." Thus, in order to prevent both jury

6

confusion and waste of time, the government should be prohibited from referring to the Uncharged Conduct.

## II. The Government Must Not be Permitted to Prematurely Offer Evidence of the Uncharged Conduct

As explained above, the government has communicated its intent to offer evidence of uncharged conduct against Lantigua at trial.  Just as it has failed to demonstrate that it is entitled to offer such evidence, the government has also failed to specify at what stage of trial it intends to offer the evidence.  It is well settled that typically, "the offer of evidence to prove the defendant's intent or knowledge *should await the conclusion of the defendant's case*."  United States v. Ozsusamlar, 428 F. Supp.2d 161, 167 (S.D.N.Y. 2006) (quoting United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980)); see also United States v. Colon, 880 F.2d 650, 660 (2d Cir. 1989) (admission of prior act evidence generally awaits the conclusion of the defense case); United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978) (same).  The Second Circuit has succinctly explained the policy underlying this long standing limitation:

> [T]he offer on similar acts evidence [on knowledge and intent] should await the conclusion of defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect.

United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980) (citations omitted).

In this case, because the government has not indicated at what stage of trial it intends to offer the Uncharged Conduct, the defense is forced to speculate and assume that the government desires to offer the evidence whenever it chooses to do so.  While it is our contention that the evidence is not admissible at trial at all, if the Court were to permit its introduction, the government must not be afforded such unrestricted freedom.  At a minimum, the government

7

must be prohibited from referencing the Uncharged Conduct during its opening statement and during its case-in-chief; any offer of this evidence must therefore wait until after the defense has rested.

There can be no doubt that the risk that the defendant will improperly be viewed by the jury as simply a "bad man," United States v. Benedetto, 571 F. 2d at 1249, will be greatly increased if the government is permitted to introduce evidence of the uncharged conduct in its opening statement or case-in-chief. See United States v. Colon, 880 F.2d 650, 662 ("permitting mention of the evidence in the government's opening and admission of the evidence during the government's case-in-in chief constituted reversible error"). Consequently, if the government is ultimately permitted to offer evidence of Uncharged Conduct, it must wait to do so until the close of the defendant's case.

## Conclusion

For the foregoing reasons, Lantigua respectfully requests that the Court preclude any testimony or evidence arising from the Uncharged Conduct. Alternatively, if the Court determines that the government is permitted to offer evidence of the Uncharged Conduct, the Court should prohibit the government from referring to it until after the close of defendant's case, and subject to an appropriate limiting instruction.

Respectfully submitted,

By /s/ Edgardo Ramos

Edgardo Ramos (er6846)
Day Pitney LLP
7 Times Square
New York, NY 10036
(212) 297-2452
(212) 916-2940 (fax)
eramos@daypitney.com
Attorneys for Defendant
Jose Manuel Lantigua

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed electronically, and served via overnight delivery on January 3, 2008:

Thomas G. A. Brown, Esq.
Assistant United States Attorney
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

Jonathan E. Gates